```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WALTER WM. BOYD, SR.         )
          Plaintiff,         ) Civil Action No. 04-206
                             ) Chief Judge Donetta W. Ambrose
       vs.                   ) Magistrate Judge Lisa P. Lenihan
                             )
CORRECTION OFFICER T. IMHOFF;)
GEORGE MESAROS; EDWARD       )
PAVLICK; and CAPTAIN COAL,   )
          Defendants.        )
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 13) be granted.

II. REPORT

Plaintiff, Walter Wm. Boyd, Sr., an inmate previously confined at the State Correctional Institution at Mercer, Pennsylvania, commenced this civil action against various officials and/or employees of the Pennsylvania Department of Corrections (DOC) at SCI-Mercer. Specifically, Defendants include the following: Correction Officer T. Imhoff; George Mesaros; Edward Pavlick; and Captain Coal. The Plaintiff alleges that Defendants violated his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution as well as Section 26 of the Pennsylvania Constitution. For the reasons that follow, the Motion to Dismiss should be granted.

A. Standard of Review

The Defendants have filed a Motion to Dismiss (doc. no. 13). Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).[1]

### B. Plaintiff's Allegations

Plaintiff asserts that on January 14, 2004, he and two other inmates were placed in the Restricted Housing Unit (RHU) in Administrative Custody (AC) pending investigation into

---

1. In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6). Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim and may be considered by the court in deciding a motion to dismiss); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

allegations that these inmates were sexually harassing female officer T. Imhoff.  Specifically, it was alleged that inmates Boyd, McDevitt and Roscoe conspired to spread rumors about Officer Imhoff in an attempt to get her in trouble and possibly removed from their block.  On or about January 26, 2004, a hearing was held before the Program review Committee (PRC) pursuant to Pennsylvania Department of Corrections (DOC) policy.  The PRC recommended that Petitioner be separated from Officer Imhoff.  Sometime prior to February 12, 2004, Plaintiff was transferred to the State Correctional Institution at Cresson.

### C. Liability under 42 U.S.C. § 1983

Plaintiff first seeks to assert liability against the Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Defendants all acted under color of state law; therefore, the relevant inquiry is whether Plaintiff's constitutional rights

were violated. His constitutional claims are discussed separately below.

### 1. Eighth Amendment

In his allegations, Plaintiff asserts that Defendants' actions in confining him in administrative custody for over thirty months amounted to cruel and unusual punishment. The Eighth Amendment, which prohibits the infliction of cruel and unusual punishment, guarantees that prison officials must provide humane conditions of confinement. In this respect, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (*quoting* Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (*citing* Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison

officials.  Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.  The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind.  *Id*.  "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  Farmer, 511 U.S. at 834 (quotation omitted).

As to Plaintiff's claims concerning the conditions of administrative custody, his allegations do not state a claim upon which relief may be granted. *See* Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).  Thus, Defendants' Motion to Dismiss should be granted as to his Eighth Amendment claim.

## 2. Fourteenth Amendment

Plaintiff also makes assertions concerning the violation of his due process and equal protection rights.  These assertions invoke the protections of the Fourteenth Amendment, which provides as follows.

> Section 1.  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within

>its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, §1.

 A. <u>Entitlement to Due Process Protections</u>

 One of Plaintiff's Fourteenth Amendment claims concerns his confinement in AC.  Resolution of this claim is addressed by referring to the United States Supreme Court's opinion in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  In <u>Sandin</u>, the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees.  Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "<u>atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life</u>."  <u>Sandin</u>, 515 U.S. at 483 (emphasis added).

 As recently explained by our Court of Appeals, an "atypical and significant hardship," under <u>Sandin</u> requires the examination of two factors:  1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of confinement in disciplinary segregation significantly were more restrictive than those imposed on other inmates in restrictive custody.  <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000). Plaintiff alleges that he was placed in AC on January 14, 2004 and remained there until his transfer to SCI-Greene sometime

before February 14, 2004, the date his Complaint was signed at SCI-Cresson.  Thus, he was confined in restricted housing less than one month.  Employing the due process analysis announced in Sandin, the federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  *See, e.g.*, Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (upholding District Court's dismissal of prisoner's due process claim concerning seven months disciplinary detention); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (holding that it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence).

Plaintiff's detention in AC lasted less than one month.  Under the authority discussed above, this Court must conclude that Plaintiff's 30-day disciplinary detention did not impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest.  Accordingly, this claim should be dismissed.

Plaintiff also asserts that Defendants violated his constitutional rights by filing a false report, which resulted in his administrative custody in the RHU.  A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest.  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).  In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation.  *Id*.  Before the Supreme Court handed down its opinion in Sandin, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation only when such charges were not subsequently reviewed in a hearing.  *Id*. at 952 (an allegation that a prison guard planted false evidence fails to state a claim where the procedural due process protections as required in Wolff v. McDonnell are provided) (citation omitted).  Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983.  *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly,

854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

Plaintiff herein was afforded a PRC hearing and, thus, had the opportunity to confront and challenge the allegedly false accusations.  That is all he is entitled to under the Due Process Clause.  See Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000).

In his complaint, Plaintiff also complains about his transfer to SCI-Cresson.  An inmate does not have a liberty interest arising under the Fourteenth Amendment guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another within a state prison system.  Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236 (1976).  Furthermore, Pennsylvania law does not create a liberty interest in remaining in one institution.  See 37 Pa. Code § 93.11(a).  Thus, Plaintiff's "transfer" claim is not cognizable under 42 U.S.C. § 1983 as it fails to state a violation of constitutional or federal law.

### B. Equal Protection

Plaintiff also raises a claim of discrimination under the Equal Protection Clause of the Fourteenth Amendment, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons

9

similarly situated should be treated alike.' "  Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification.  Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny.  City of Cleburne, 473 U.S. at 439.  Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge.  F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

Moreover, to demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination.  Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987).  Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation.  Village of

10

Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239 (1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996). Discriminatory purpose implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.  Hernandez, 500 U.S. at 360.  An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision.  McCleskey, 481 U.S. at 293.

Plaintiff offers no facts whatsoever that would substantiate a claim that defendants' actions were motivated by discrimination.  Rather, the record evidence supports the conclusion that defendants' actions were taken solely for safety concerns.  In other words, he has not demonstrated the manner in which his treatment has differed from the treatment that has been afforded to other inmates who threaten staff members.  He merely alleges conclusions without presenting any supporting facts. Conclusory statements unsupported by factual allegations are not sufficient to support a cause of action under the civil rights statutes.  Frazier v. SEPTA, 785 F.2d 65, 67-68 (3d Cir. 1986); Bartholomew v. Fischl, 782 F.2d 1148, 1151-52 (3d Cir. 1986).  As such, Plaintiff cannot complain that he suffered a violation of his equal protection rights with respect to the decision to place

11

him in administrative custody and transfer him away from Officer Imhoff. Consequently, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claim of discrimination.

### D. State Law Claim

Plaintiff included in his Complaint a state law claim alleging a violation of the Pennsylvania Constitution. A federal court has "supplemental jurisdiction" over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Subsection 1367(c) authorizes a federal court to decline jurisdiction over state claims even though the court has federal jurisdiction when:

1. the claim raises a novel or complex issue of State law;

2. the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3. the district court has dismissed all claims over which it has original jurisdiction; or

4. in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

When "the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations

of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).  This Report recommends the dismissal of the Plaintiff's Complaint.  It follows that Plaintiff's state law claim should be dismissed as considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction.  *Accord* Lovell Manufacturing v. Export-Import Bank of the U.S., 843 F.2d 725, 734 (3d Cir. 1988).

### III. CONCLUSION

It is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 13)  be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


    /s/Lisa Pupo Lenihan  
LISA PUPO LENIHAN  
U.S. Magistrate Judge

Dated:    February 22, 2006

```
cc:         Donetta W. Ambrose
            United States District Judge, Chief


            WALTER WM. BOYD, SR., EA-6059
            SCI Cresson
            P.O. Box A
            Cresson, PA 16699

            Scott A. Bradley
            Office of the Attorney General
            564 Forbes Avenue
            6th Floor, Manor Complex
            Pittsburgh, PA 15219
```